## LONABAUGH v. MORROW.

Evidence—Admissibility of Parol Testimony to Show Oral Direc-
tions in Addition to Written Authority—Services—Conflict of
Evidence.

1. Where a party is employed to perform certain services under
written authority, it is competent to show by oral evidence
additional instructions to perform other acts not covered by
the writing, since such evidence would not tend to vary the
terms of the written authority, but only to prove authority
for another object.

2. Where a sheriff was employed under written authority by the
mortgagee of certain cattle to gather them for the purpose
of foreclosure, and the sheriff sued the attorney, who
handed him such written authority, for his services in gath-
ering certain other cattle under alleged instructions from
said attorney, oral evidence was admissible to show that
the defendant instructed plaintiff to gather certain other
cattle not described in the written authority, and at the
same time handed him two executions against the mort-
gagors in favor of other clients of the defendant. Such
evidence did not involve any change of the terms of the
written instrument, or affect the written instructions, but
showed a new employment by a different principal.

3. Since there was a separate employment, it was immaterial
whether the oral instructions were given at the same time,
or before or after the written authority was delivered.

4. There being a conflict in the evidence as to whether the de-
fendant employed the plaintiff to gather certain cattle other
than those described in the written authority, and the Dis-
trict Court having passed upon the conflict, its decision
will not be disturbed; there being sufficient evidence to
sustain the finding.

[Decided November 24, 1902.]              (70 Pac., 724.)

Error to the District Court, Sheridan County, Hon.
Joseph L. Stotts, Judge.

Action brought by Frank Morrow against the Bank of Commerce, a corporation, and E. E. Lonabaugh to recover a sum claimed to be due for services in gathering certain cattle belonging to the mortgagors in a certain chattel mortgage held by the bank. The District Court found that the bank employed the plaintiff to gather the cattle described in the chattel mortgage under written authority and directions, and that said Lonabaugh acted as attorney and agent for the bank; that the defendant Lonabaugh also delivered to plaintiff (who was sheriff of the county) two executions against the mortgagors aforesaid, and directed him to gather the cattle mentioned in the mortgage and also other cattle not included therein, under the executions; and that said Lonabaugh orally directed the gathering of all cattle that were gathered by plaintiff, as well those not described in the mortgage, as those which were therein described. Judgment was rendered against the defendant Lonabaugh for the unpaid balance due for the services of the plaintiff. The other facts are stated in the opinion.

*E. E. Lonabaugh,* for plaintiff in error.

In making the round-up Morrow did not act in his official capacity as sheriff. He says, among other things: "After he gave me the execution I consented to go as agent, less risk as agent than under the execution." His instructions were certainly fresh in his mind at that time, and yet he says nothing about gathering any cattle for Lonabaugh, or of having been employed by Lonabaugh. The testimony of the president of the bank is that he employed Lonabaugh to attend to the foreclosure of the mortgage, and the testimony of the latter is that he never employed Morrow to gather any cattle except those described in the chattel mortgage. All parties, therefore, agree that Morrow acted simply as an agent of the Bank of Commerce, and not in his official capacity. It is quite clear that he preferred to act in his private capacity, rather than as an officer, and that he

intended to avoid any liability officially. In other words, he desired to protect his official bondsmen, in the event of there being any difficulty over his actions. In order that it may clearly appear that there is no ground for questioning the statement that Morrow acted in his private capacity as agent only, I quote from the testimony of the plaintiff in error: "I did not give Mr. Morrow any instructions to gather any cattle only those described in the chattel mortgage." And, again, in answer to question by the court: "I had Mr. Perkins' written authority, so he could make no mistake. I considered that my duty, and had no desire to extend the terms of the chattel mortgage. I never gave Mr. Morrow any instructions to gather anything under the executions. The cattle in the mortgage I considered worth from $4,000 to $6,000. The mortgage was a first lien to the amount of the debt secured thereby, about $2,000. I sent the executions along for the purpose of levying on the equity in these cattle, over and above the amount due to the bank. I never instructed Mr. Morrow to gather any cattle or make any levy under the executions, and he never claimed to me that he did so." Under these circumstances, where is there any evidence whatever to sustain finding two of the court, that "Lonabaugh delivered to Morrow two executions and directed him to gather the cattle mentioned in the mortgage and also other cattle not included therein, under said executions?" If this finding be true, then Morrow went in his official capacity, acted as sheriff and made an official levy. This finding is without any evidence whatever to sustain it.

In finding No. 3 the court finds that defendant Lonabaugh orally directed Morrow to gather all of the cattle gathered by plaintiff (Morrow), under the chattel mortgage to the bank, both the cattle described in the mortgage and the other cattle not described therein, but gathered by Morrow. The effect of this finding, or another method of stating it would be, that Lonabaugh obtained from the Bank of Commerce written authority employing Morrow as its

agent to gather the cattle described in the instrument, and also obtained for Morrow's guidance a duly certified copy of the chattel mortgage from the Wallaces to the bank, accurately describing the cattle covered thereby and claimed by the bank.

It is true that Morrow testifies that he had instructions to gather the seven-cross cattle; that Lonabaugh directed him to gather the seven cross cattle, and he now says that he does not know when these instructions were given, whether before or after the written authority was delivered to him; but on a former occasion when his memory was fresh on this subject he testified as follows: "Did you have any order in writing?" Answer: "I had an order in writing to gather certain brands." Question: "You say there were some preliminary orders, then after these preliminary orders was there some writing given you?" Answer: "Yes, sir." This was Morrow's evidence in an action tried shortly after he had gathered these cattle, between the Bank of Commerce and the Wallace brothers. Of course, aside from the evidence, the whole transaction bears an evidence of improbability. It is extremely improbable that any attorney, if given credit for reasonable good sense, would exercise such care to get everything in writing, and then orally direct the party to lay aside the writings, pay no attention to his limited authority therein given, and act in excess of it. Why was a certified copy of the mortgage obtained? Why was written authority given? Why were the brands all marked both on the mortgage and written instructions? All these were mere folly, if they are to be succeeded by oral directions. It is so improbable as to raise a strong presumption that it cannot be true. And, even if Morrow did so testify, he is directly contradicted by defendant.

Again, under what rule of law is such evidence admissible, or such a finding proper? Admitting, for the purpose of the argument, that Lonabaugh handed the chattel mortgage and appointment as agent to Morrow and at the

same time told Morrow to gather under these instruments the seven cross cattle, is Morrow entitled to testify to it? Can he accept his appointment as agent, as shown by the written instructions and mortgage, and then come into court and say: "Yes, I received these written directions, but at the same time I was orally directed by these same parties to gather other cattle"? We respectfully submit that if allowed to so testify, the plaintiff below (Morrow) violates one of the fundamental rules governing the introduction of evidence, that oral evidence cannot be received to vary, enlarge or explain a contemporaneous written instrument, not ambiguous in its terms. Having received written directions what cattle to gather, and having in his possession a certified copy of the chattel mortgage, can plaintiff Morrow say that these instructions were orally enlarged? We think not.

It would seem to be useless to cite authority in support of the foregoing rule. It is considered and a number of authorities cited in the case of Ivinson v. Hutton, 3 Wyo., 61. (See Haskins v. Dern, 56 Pac., 953; Moyle v. Cong. Ch. Soc., 50 Pac., 806; Bank v. Foote, 42 Pac., 205; Cohen v. Jackoboise, 59 N. W., 665; Atkinson v. Blair, 38 Ia., 156; Sylvester v. Paper Co., 75 N. W., 1092; Sanborn v. Plowman, 35 S. W., 193; Lumber Co. v. Dickey, 27 S. W., 955; Wakefield v. Steadman, 12 Pick., 562; Adams v. Wilson, 12 Metc. (Mass.), 138; Skabis v. Ferge, 78 N. W., 426.)

Finding 4 only corroborates what has been said as to finding 3. Finding 4 is to the effect that in directing said plaintiff (Morrow) to gather all of the cattle gathered by plaintiff under the chattel mortgage to the bank, the defendant, E. E. Lonabaugh, acted as attorney and agent of the bank. This finding is certainly erroneous. The bank has been released by the judgment of the court from any liability to Morrow. The agent of the bank is held. Under some circumstances, where an agent does not disclose his principal, he makes himself personally liable; but when the principal is known, as in this case, it is a strange con-

dition that the principal is released and the attorney for the principal held.

Finding 6, that plaintiff's services were reasonably worth the sum of $112.20, is also erroneous. An examination of the amended petition shows that plaintiff Morrow brought his action for the reasonable value of his services rendered, alleging the value to be $15, and for the further sum of $97.20 expenses paid by him. We submit that there is no proof of the items of expense incurred by him, if any, nor of the reasonableness of the same, or the reasonable value of his services performed, if any. Nowhere is there any evidence whatever that the value of Morrow's services and expenses incurred amount to $112.20. The only place that this appears is in the judgment.

In finding 7 the court exonerates the Bank of Commerce from any liability to Morrow for any portion of the sum remaining unpaid; and we submit that if the bank is not liable its attorney is not.

In finding 8 the court declares that defendant Lonabaugh is liable for the whole amount of $112.20, and he is credited on this with $20 advanced by him and with $28 advanced by the Bank of Commerce. This, too, is error. As the defendants were not jointly liable, certainly Lonabaugh is not entitled to credit for the $28 paid by the bank, nor is he liable for the whole amount, in as much as the bank got six head of cattle and Lonabaugh none. Morrow testifies that it was just as much trouble to gather the six head as it was to get the hundred. If the court had found what the services were worth that were rendered to the bank, and on that had credited the sum paid by the bank, and had then found what the services were worth that were rendered to Lonabaugh and had credited thereon the sum of $20 advanced by him, it would have been clearer as to just what the court meant.

Morrow's counsel tried this case on the theory that the bank was liable, and that Lonabaugh, as its agent, was also liable. There was never any indication either from oppos-

ing counsel or Morrow that Lonabaugh was held, or claimed to be held, by reason of the two executions that Morrow had taken with him. .

It might be considered that there is a point in the fact that Morrow was not immediately notified to return the cattle as soon as he arrived at Sheridan with them. As to this, it is sufficient to say that Morrow, having gathered the cattle and brought them to Sheridan, the damage incurred by him was already fixed. Nothing could be done to save him from liability, unless it were possible to hold the cattle under the executions. It was only proper that a reasonable time should be taken to investigate the matter, with a view to holding the cattle, if possible. This was done, and notice was given to Morrow on Monday. The cattle were taken back on Tuesday morning. They were in Sheridan from Sunday night until Tuesday morning.

Chattels in possession of the mortgagor are subject to levy and sale under an execution subject to mortgagee's interest. (9 Ency. of Law, 624; Herman on Chattel Mortgages, 213; Gould v. Armagost, 46 Neb., 897; Seibenbaum v. Delanty (Wash.), 30 Pac., 662; Hull v. Carnley, 11 N. Y., 501; Byrd v. Forbes, 13 Pac., 715; Rindskoff v. Lymon, 16 Ia., 260; Skinners v. Brill, 38 Wis., 648; McGregor v. Hall, 3 Stew., 397; Harbinson v. Harrell, 19 Ala., 753; Merritt v. Niles, 25 Ill., 282; Mattison v. Baucus, 1 N. Y., 295; Redman v. Hendricks, 1 Sandf. (N. Y.), 32; Bailey v. Burton, 8 Wend. (N. Y.), 339; Saxton v. Williams, 15 Wis., 292; Bk. v. Crary, 1 Barb., 549-550; Beach v. Derby, 19 Ill., 622; Wheeler v. McFarland, 10 Wend., 322; Randall v. Cook, 17 Wend., 57; Cotton v. Marsh, 3 Wis., 241; Cotton v. Watkins, 6 Wis., 635; Stief v. Hart, 1 Comst. (N. Y.), 20; Hall v. Sampson, 35 N. Y., 274; 91 Am. Dec., 56; Hamill v. Gillispie, 48 N. Y., 560; Wagner v. Jones, 7 Daly, 378.)

*Appelget & Mullen,* for defendant in error.

The conflict of evidence occurs in the testimony of Lonabaugh and Morrow, with reference to just what cattle

Morrow was instructed to round up and gather. Mr. Lona-
baugh claims that he instructed Morrow to gather only cat-
tle described in the mortgage, while Morrow claims that
Lonabaugh instructed him to gather other brands, particu-
larly the seven-cross brand. As we view the case, this ques-
tion of fact is decisive of the whole controversy as to the
liability for the unpaid portion of Morrow's fees, services
and expenses.

Plaintiff in error contends that Morrow did not act of-
ficially as sheriff in making the round up of the cattle, nor
any portion of them. We believe the evidence shows that
he did so act when he took the seven cross cattle into his
possession, though there is evidence indicating that Mor-
row acted as the personal agent of Mr. Lonabaugh in gath-
ering up and driving in the seven cross brand to the extent
of ninety head.

We do not seek to deny the fact of Morrow's agency of
the Bank of Commerce under its chattel mortgage; nor
dispute the terms of the mortgage, or the paper constituting
Morrow the bank's agent, signed by Mr. Perkins. In short,
we admit that all mortgaged cattle gathered were gathered
pursuant to the chattel mortgage and the written instruc-
tions given with reference to it. We desire to discuss the
evidence with reference to the gathering of the seven cross
brand of cattle that were not described in the chattel mort-
gage, but were owned by Martha Wallace. With reference
to this brand, Morrow testifies: "I had instructions to
gather this brand outside of the chattel mortgage. I went
as agent. I had Mr. Lonabaugh's authority to gather that
and I did it." Question: "Did you claim that you gath-
ered these other brands under this chattel mortgage?"
Answer: "Instructions were given me outside to gather
this brand, to gather this in the chattel mortgage, but out-
side I had instructions to gather this brand." Morrow
states that he was given $20 by Lonabaugh. To this pos-
itive testimony on what we regard as the most important
question of fact in the case, Lonabaugh does not make an

unqualified denial, as in his cross-examination we find the following: Question: "Did you ever give the sheriff, Mr. Morrow, directions to gather any cattle except what was in the mortgage?" Answer: "No, sir; I think I so stated." Question: "Did he understand, by anything you said to him, that he should gather anything except what was in the chattel mortgage?" Answer: "I don't know as to that. We talked the matter over several times and arranged the preliminary matters, and arranged about his going up there. *I don't know what was said to him at that time as to what cattle he was to get.* I know I never thought of giving him any authority to gather any cattle except those described in the certified copy of the chattel mortgage. I got Mr. Perkins' written authority, so he could make no mistake. I considered that my duty, and had no desire to extend the terms of the chattel mortgage. I never gave Mr. Morrow any instructions to gather anything under the executions. The cattle in the mortgage I considered worth from $4,000 to $6,000. The mortgage was a first lien to the amount of the debt, about $2,000. I sent the executions along for the purpose of levying on the equity in these cattle, over and above the amount due the bank. I never instructed Morrow to make any levy under the executions, and he never claimed that he did so." The substance of this testimony is that he did not know what cattle he told Morrow to gather. That he sent the executions along for the purpose of levying on the equity in the cattle, yet he never authorized Morrow to make a levy under the executions. It would appear that Mr. Lonabaugh was rather uncertain as to just what did take place. His testimony does not amount to a denial of Morrow's testimony, and while it tends to conflict with Morrow's testimony in some respects, it conflicts with itself far enough to appear uncertain. But there is other testimony corroborative of Morrow on this point. Lonabaugh says: "I think Morrow came to me; he met me at the stairway, near my office, and told me that he had brought in some cattle." Question: "Told you what brands?"

Answer: "Yes, sir, he did." Question: "And then at that time did you tell him that these cattle carrying this one brand were not the cattle wanted, and to turn them back?" Answer: "I did not at the time direct him to turn them back. I wanted to see if I could hold them under the execution, or mortgage, and went to examine the records and see whether the cattle he brought down could be held under the chattel mortgage or under the execution that had been issued." And, again: "I would have held them if I could have done so legally;" and, in answer to a question put by his counsel, as to what costs he advanced to Morrow at the time he started him out for the cattle, he says: "I think I paid him $20 at the time." Now, it had been shown by Morrow that the Bank of Commerce had already given Morrow $25 to apply on its portion of the costs. So if Morrow was not acting independently of the bank's interests, why was Lonabaugh advancing cost and expense money? Now, we hold that these facts corroborate Morrow's testimony to the effect that he had instructions from Lonabaugh to gather cattle outside of the chattel mortgage. Here was a ratification of Morrow's acts. He was told to hold what he had until the records were investigated. Lonabaugh knew that Morrow had cattle in his possession not included in the mortgage; he also knew, of course, that they had not been gathered pursuant to the chattel mortgage. He knew they had not been gathered by mistake. So he must have known that Morrow either acted as sheriff, and took them under the execution, or that he had gathered them as Lonabaugh's personal agent. Lonabaugh further testified: "I was attorney for some execution creditors, and at the same time I placed in his hands either one or two executions, but as to those I was personally responsible to him for any fees that he earned." We do not know what he meant by that, unless he believed that Morrow was acting as his personal agent in gathering cattle outside of the chattel mortgage.

The residue or equitable interest of the mortgagors in

the mortgaged cattle could not be reached by a direct levy in any event. The remedy would be by garnishment, or proceedings in aid of execution, to reach any surplus that might remain in the hands of mortgagee after satisfaction of its mortgage. (Cobbey Chat. Mortg., Secs. 722-724; Burnham v. Doolittle, 14 Neb., 214; Reed v. Fletcher, 24 Neb., 435; Bank v. Clement, 26 N. W., 583; Lumber Co. v. Fisher, 18 Neb., 334; Cochrane v. Rich, 142 Mass., 15; Keith v. Haggart, 4 Dak., 438; Coughran v. Sunback, 70 N. W., 644 (S. D.) Revised Statutes, Section 3932, provides for supplementary proceedings by a judgment creditor by action in aid of execution, and the segregation of the property is provided for, under Section 3952, by the appointment of the sheriff, as receiver of the property of the judgment debtor, &c.

In view of the above, we cannot understand how Mr. Lonabaugh really expected to levy on the equity of the mortgagors in the mortgaged cattle, or why he had execution writs issued for any such purpose. Apparently Mr. Lonabaugh believed the mortgagors had interests in other cattle, that he might reach by levy, that were not included in the mortgage. He evidently had a suspicion that they owned an interest in the seven cross brand, which suspicion was not dispelled until he had made a careful examination of the records after Morrow's return. He had some motive in placing these executions in the hands of Morrow, and giving Morrow $20 to use as expense money, and we believe it was an intelligent motive. Where there is a conflict of evidence, the court, sitting as a jury and making findings of fact, will only be reversed for a gross abuse of discretion. (Hood v. Smiley, 5 Wyo., 70; announced in the case of Rainsford v. Massengale, 5 Wyo., 1.)

Morrow testifies generally that he employed a number of men, five, we believe, in making the round up. He employed a man named Foy eight days in locating cattle in the first instance, and in assisting to hold them at Sheridan. He testifies that the bill of expense incurred was necessary,

and that the amount of the services and accrued expenses remaining unpaid was the sum of $64.20, and that $48 had already been paid. Lonabaugh does ont deny the necessity of incurring the expense—in fact, he states that Morrow had authority to hire all necessary assistance to gather the cattle. He does not attempt to question the reasonableness of the bill, so we say there is evidence sustaining the finding as to the amount due.

The court evidently recognized the difficulty, in view of the evidence, of separating, or dividing, the expense, and compensation for the services, between the bank and Lonabaugh. It was clear that Morrow should be paid by one or the other. The cattle were all rounded up and gathered from the same place, so far as anything appears to the contrary. The bank is not expressly credited with the $25 it paid to Morrow on expenses, nor is it expressly charged with any amount for the gathering of the six head turned over to it. If the total expense should be apportioned among the whole ninety-six head of cattle gathered and driven in, it would amount to about the sum of $1.16 per head; and, accepting the total expense as the sum of $112.20, at that rate the bank would have to pay about $6.96 of the total sum due for services and expenses. But the bank was in fact out $25, or about $18.04 in excess of this amount of $6.96, its proportionate share. Now, if the bank has really paid more than its proportionate share on the total sum of expense and services, and Lonabaugh is credited with it, he cannot complain of the finding, as in that event it would be in his favor. Lonabaugh, in his brief, complains that while the bank paid $25, it got six head of cattle, and he got none. It might be well to observe that the fact that he realized on no cattle was not the fault of Morrow, nor of the trial court. It was his own fault in sending out for the wrong cattle.

CORN, JUSTICE.

The defendant in error brought suit against plaintiff in error and the Bank of Commerce to recover for labor and

money expended in gathering certain cattle. The bank had a mortgage on cattle belonging to Wallace Brothers and employed plaintiff in error, an attorney at law, to foreclose it. The latter employed defendant in error, Morrow, who was at that time Sheriff of Sheridan County, to gather the cattle described in the mortgage, and handed to him a paper executed by the bank appointing him their agent for the purpose and describing the cattle by their brands. Lonabaugh also handed to Morrow two executions in favor of other clients of his against the mortgagors, and, as Morrow testifies, instructed him also to gather certain other cattle branded 7X. Lonabaugh denies giving the last mentioned instructions, and says that his purpose in handing the executions to Morrow was to have them levied on the mortgaged cattle subject to the mortgage, their value being very much greater than the claim of the bank. The bank, through Lonabaugh, gave Morrow $25 to apply on his expenses and Lonabaugh gave him $20 additional for the same purpose. Morrow brought in ninety-four head, but only six of them were covered by the mortgage, the remainder being 7X cattle. Plaintiff in error examined the records and found that the latter were not subject to his executions and they were returned to their range and turned out. The court found in favor of the bank, but gave judgment against Lonabaugh in favor of Morrow for the amount of his account, less the proper credits.

Plaintiff in error contends that, Morrow's instructions from the bank being in writing, it was error to admit evidence to show additional instructions given by himself, and cites authorities to the principle that parol evidence is not admissible to vary the terms of a written instrument. The authorities are not applicable to the facts of this case. Even if the bank itself, after giving to its agent written authority and instructions to perform certain acts, had found it desirable or convenient to add oral authority and instructions to perform other acts not covered by the writing, there is no reason why it might not do so and no reason why such

authority and instructions might not be established by parol evidence. Such evidence would not tend to vary the terms of the written authority, but only to prove authority for another object. In Story on Agency it is said that: "Although in general the maxim is true that where an express power is conferred by writing, it cannot be enlarged by parol evidence, yet the maxim is applicable only to cases where the whole authority grows solely out of the writing, and the parol evidence applies to the same subject matter, at the same point of time, and therefore in effect, seeks to contradict or vary or control the effect of the writing. When parol evidence seeks to establish a subsequent enlargement of the original authority, or to give an authority for another object; or where the express power is engrafted on an existing agency, affecting it only *sub modo* to a limited extent, the maxim loses its force and application." (Story on Agency, Sec. 79; Mechem, Agency, Sec. 301; Hartford Fire Ins. Co. v. Wilcox, 57 Ill., 180.)

But in this case it was not sought by the parol evidence to establish an enlargement of the original authority, or to establish that the bank had given authority for another object, but the purpose of the evidence was to show that the plaintiff in error had also employed Morrow as his agent to perform work for him entirely separate and distinct from that undertaken by Morrow for the bank. It is too plain for argument that this did not involve any change of the terms of the written instrument or affect the written instructions in any way whatever. It was a new employment by a different principal. It is also apparent that, being a separate employment, it makes no difference whether the oral instructions from Lonabaugh were given to Morrow at the same time he handed him the writing from the bank or before or afterwards. We think the court committed no error in admitting the parol evidence.

It is also contended that the findings of the court are not sustained by the evidence. The controversy seems to have arisen out of a misunderstanding between Morrow and

Lonabaugh. The former testifies positively that the latter instructed him to gather the 7X cattle and the latter testifies as positively that he did not. But Morrow also testifies that, when Lonabaugh requested him to act as agent for the bank in gathering the mortgaged cattle, he refused to go, saying that he did not want to do any business for the cashier of that bank. Lonabaugh replied that he would compel him to go by issuing executions upon some judgments he had against the mortgagors. That he then consented to go, preferring to act as agent instead of officially, as sheriff. That Lonabaugh did hand him the executions and also gave him $20 in addition to the $25 given him by the bank, to pay expenses. These facts are not denied by plaintiff in error, and they strongly indicate that, at that time, he understood that Morrow was starting out not only as agent for the bank, but as his own agent also. He states that his purpose in handing the executions to Morrow was to have them levied on the equity in the mortgaged cattle over and above the amount due the bank. But, as it is reasonable to presume that the bank was to pay the expense of gathering the mortgaged cattle, and there is no evidence to the contrary, this does not explain the advancement of money by plaintiff in error out of his own pocket to assist in defraying Morrow's expenses. Indeed, he does not seem to be able to deny that he may have given Morrow to understand that he was to gather other cattle. When asked on cross-examination, "Did he understand by anything that you said to him that he should gather anything except what was in the chattel mortgage," he replied: "I don't know as to that. We talked the matter over in my office several times and arranged the preliminary matters and arranged about his going up there. I don't know what was said to him at that time as to what cattle he was to get." But he adheres to the statement that he never thought of giving Morrow authority to gather any cattle other than those described in the mortgage. Their recollection evidently differed as to the conversations. The

District Court passed upon this conflict in the evidence and we will not disturb its decison.

The evidence for the plaintiff was not presented in an orderly way, but we think it sustains the findings of the court. The judgment will be affirmed.    *Affirmed.*

POTTER, C. J., and KNIGHT, J., concur.